IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CECIL D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-386-SMD |
| | ) | |
| FRANK M. BISIGNANO, | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

On September 27, 2021, Plaintiff Cecil D. ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act. Tr. 263-278. He also filed a Title XVI application for supplemental security income on September 20, 2021. Tr. 263-278. In both applications, Plaintiff alleged disability beginning September 6, 2018. Tr. 263-278. Plaintiff's applications were denied at the initial administrative level and on reconsideration. Tr. 161-170, 177-184. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found he was not disabled. Tr. 8-28. Plaintiff appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-7. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff appeals that decision pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court REVERSES and REMANDS the

Commissioner's decision for further proceedings.[1]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 11); Def.'s Consent (Doc. 12).

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy he can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II. STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 45 years old on the date of the ALJ's decision. Tr. 22, 24. He did not complete ninth grade and has past relevant work as a tarper and a truck driver. Tr. 288. Plaintiff alleged disability due to back problems, neck problems, anxiety, and depression. Tr. 287.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date. Tr. 13. At step two, the ALJ found Plaintiff has the severe impairments of cervical stenosis with radiculopathy, herniation, and degenerative changes at C4-5 and C6-7, status-post discectomy and fusion surgery in 2019, and lumbar radiculopathy with multi-level degenerative changes. Tr. 13-17. At step three,

the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. Tr. 17.

The ALJ proceeded to determine Plaintiff's RFC, finding he has the capacity to perform light level work with additional functional limitations, including that he is limited to frequent climbing of ladders, ropes, and/or scaffolds, frequent stooping, and frequent crawling. Tr. 17-22. Plaintiff was also restricted from exposure to workplace hazards such as dangerous moving machinery, unprotected heights, and exposure to the extreme cold temperatures. Tr. 17-22. At step four, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 22. However, at step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), and found that other work existed which Plaintiff could perform. Tr. 22-24. This work included dog bather, fast food worker, and housekeeper-cleaner. Tr. 22-24. Accordingly, the ALJ found Plaintiff was not disabled from September 6, 2018, through the decision date. Tr. 24.

## IV. PLAINTIFF'S ARGUMENTS

Plaintiff presents two issues for the Court's review:

(1) Whether the ALJ properly evaluated the opinions of Plaintiff's treating physicians.

(2) Whether the Appeals Council failed to properly consider the records submitted to it.

Pl.'s Br. (Doc. 10) p. 2.

As explained below, remand is warranted for the Commissioner's consideration of evidence submitted to the Appeals Council. Because this requires remand, the Court will not address Plaintiff's first argument.

## V. ANALYSIS

As a general rule, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). If a claimant presents evidence after the ALJ's decision, the Appeals Council must review it if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R § 404.970(a)(5); 416.470(a)(5). Additional evidence "is new if it is not part of the claim(s) file as of the date of the hearing decision." The Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-3-3-6, 1993 WL 643129 (May 1, 2017). It is "material" "if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." *Id*. And it "relates to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id.*

The Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.* If the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir. 2014)). Under the regulations, whether evidence is new, material, chronologically relevant, and creates a

reasonable probability of changing the outcome of the Commissioner's decision is subject to the court's *de novo* review. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320-21 (11th Cir. 2015).

Here, Plaintiff submitted four exhibits for the Appeals Council's review. Problematic here is a neuropsychological evaluation performed by Dr. John Goff ("Dr. Goff") on August 28, 2024, approximately three months after the ALJ issued her decision. Pl.'s Br. (Doc. 10) pp. 12-13. The Appeals Council acknowledged the evaluation but found that it, along with the other evidence submitted, did not show "a reasonable probability that it would change the outcome of the decision." Tr. 2. The Appeals Council provided no further explanation as to its decision. Upon *de novo* review, the Court finds that Dr. Goff's neuropsychological evaluation creates a reasonable probability of changing the administrative outcome. Therefore, the case will be remanded to the Commissioner.

To begin, Dr. Goff's neuropsychological evaluation was new, material, and relates to the period at issue. It is new because it was not part of the record before the ALJ. It is material because it is directly related to issues adjudicated by the ALJ.[5] And it is chronologically relevant even though it was performed after the ALJ issued her decision. The Eleventh Circuit has made clear that evidence postdating an ALJ's decision may be chronologically relevant when it relates to the claimant's condition during the period

[5] Historically, courts within the Eleventh Circuit define "material" to mean that there is a *reasonable possibility* the evidence would change the administrative result. *See, e.g.*, *Atha v. Comm'r, Soc. Sec., Admin*., 825 F. App'x 931, 936 (11th Cir. 2015); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987); *Vega v. Comm'r of Soc. Sec*., 265 F.3d 1214, 1218 (11th Cir. 2001). Regardless of whether the historical court definition or the HALLEX definition is used, Dr. Goff's evaluation is material.

adjudicated by the ALJ. *Washington*, 806 F.3d at 1322-23.[6] Here, Dr. Goff reviewed Plaintiff's medical records from the relevant period and expressly opined that Plaintiff's assessed symptoms and limitations have existed since 2019. Importantly, nothing suggests that Plaintiff's cognitive functioning materially declined between the ALJ's decision and Dr. Goff's examination, which occurred approximately three months later. Thus, Dr. Goff's evaluation relates to the period at issue and is chronologically relevant. *See, e.g.*, *T. v. Bisignano, Comm'r of Soc. Sec.*, 2026 WL 579940, at *6 (M.D. Ala. Mar. 2, 2026) (finding that an evaluation was chronologically relevant where the assessment indicated that the symptoms and limitations dated back six weeks before the ALJ's hearing decision).

Further, when considered with the evidence previously before the ALJ, Dr. Goff's neuropsychological evaluation creates a reasonable probability that the outcome of the Commissioner's decision would change. The evidence before the ALJ concerning Plaintiff's mental functioning generally reflects no more than mild limitations. For example, during a 2022 consultative examination, Dr. King found no overt evidence that Plaintiff experienced anxiety, depression, or agitation. Tr. 15. He noted that Plaintiff was, *inter alia*, alert and fully oriented, demonstrated reasonably good concentration, communicated effectively, possessed an appropriate fund of knowledge and intact abstract reasoning skills, and exhibited normal memory. Tr. 15. Dr. King did not diagnose Plaintiff

[6] In *Washington*, the Eleventh Circuit found a psychological evaluation performed seven months after the ALJ's decision chronologically relevant where the psychologist considered the claimant's symptoms during the relevant period, reviewed medical records from that period, and there was no evidence that the claimant's cognitive abilities had declined after the ALJ's decision. 806 F.3d at 1322-23. The Eleventh Circuit has subsequently explained that *Washington* applies in those specific circumstances—where the claimant described symptoms from the pre-decision period and the examiner reviewed records from that period. *See, e.g.*, *Downing v. Comm'r of Soc. Sec.*, 850 F. App'x 609, 616 (11th Cir. 2021).

with a mental impairment and opined that Plaintiff could meet customary work pressures, perform tasks that were simple to mildly varied in nature, and relate adequately to co-workers, supervisors, and the general public. Tr. 16. Consistent with those findings, a state-agency psychological consultant concluded in March 2022 that Plaintiff did not have a medically determinable mental impairment. Tr. 16.

Evidence subsequent to those evaluations reflects additional signs and symptoms of mental impairment indicating mild functional limitations. During a 2023 consultative examination, Dr. Dillon observed that Plaintiff's affect was constricted and flat and that he was minimally cooperative, at times hanging his head or hiding his face. Tr. 15-16. Dr. Dillon nevertheless found Plaintiff's thought associations intact, thought content logical, and observed intact memory, insight, judgment, and decision-making ability. Tr. 16. He estimated Plaintiff's intellectual functioning to be in the low-average range. Tr. 16. Although Dr. Dillon diagnosed major depressive disorder and a specific situational phobia, he opined that Plaintiff had no impairment in his ability to understand, remember, and carry out simple instructions, and only mild impairment in his ability to understand, remember, and carry out complex tasks, respond to supervision and coworkers, and manage work pressures. Tr. 16. Another state-agency psychological consultant who reviewed the record in June 2023 likewise concluded that Plaintiff's mental impairments caused only mild limitations and were not severe. Tr. 16. Based on this later evidence, the ALJ found these opinions—which established medically determinable mental impairments causing only mild mental limitations—persuasive and imposed no mental limitations in Plaintiff's RFC. Tr. 16.

Dr. Goff's psychological evaluation, however, presents a materially different picture of Plaintiff's mental functioning over the relevant period. Critically, this picture is based on, *inter alia*, objective testing that does not appear to have been performed in the evaluations considered by the ALJ. For example, while Dr. Dillon estimated that Plaintiff's intellectual functioning fell within the low-average range, Tr. 533, Dr. Goff administered the Wechsler Abbreviated Scale of Intelligence ("WASI-II") test, which produced an IQ score of 71—a score that falls at the bottom of the borderline range of psychometric intelligence.[7] Tr. 92. Further, Dr. Goff indicated that Plaintiff's verbal comprehension index was 67, "which is an extremely low score." Tr. 92. Additionally, while Plaintiff's academic transcript—which indicated that Plaintiff did not complete ninth grade—was before the ALJ, evidence generated from Dr. Goff's examination showed that Plaintiff demonstrated a fourth-grade reading level, poor spelling, an inability to rephrase simple sentences, and an inability to perform simple mathematical calculations. Tr. 92. Based on this objective testing and other observations, along with the record evidence before the ALJ, Dr. Goff diagnosed Plaintiff with moderate-to-severe Major Depressive Disorder and Pain Disorder, and concluded that Plaintiff's low-level cognitive functioning, considered together with his chronic pain, suggested a severe impairment that would result in marked and extreme functional limitations. Tr. 95.

---

[7] The WASI-II has historically characterized scores of 80-89 as "low average" and scores between 70-79 as "borderline." Below 70 is considered extremely low and potentially associated with an intellectual disability. *See* Guilmette et al., *American Academy of Clinical Neuropsychology Consensus Conference Statement on Uniform Labeling of Performance Test Scores*, 34 *The Clinical Neuropsychologist* 437, 442-43 (2020).

The Court concludes that consideration of Dr. Goff's examination—which was based on objective testing that suggested functional limitations substantially more restrictive than those found by either the ALJ or the previous psychological examiners—results in a reasonable probability that Plaintiff's disability determination would change. Indeed, Dr. Goff concluded that Plaintiff had moderate limitations in remembering instructions, dealing with changes in a routine work setting, using judgment in work-related decisions, and carrying out his daily activities. Tr. 94-95. He opined that Plaintiff had marked limitations in his ability to carry out instructions and to respond appropriately to customers or other members of the general public. Tr. 95-96. Further, he opined that Plaintiff had extreme limitations in his ability to respond appropriately to supervision, co-workers, and customary work pressures. Tr. 95. Dr. Goff also found that Plaintiff would have extreme limitations in his ability to maintain attention, concentration, or pace for periods of two hours or more. Tr. 95. Importantly, these limitations are based on evidence that is not merely cumulative of the evidence considered by the ALJ. Rather, the psychological evaluation directly concerns functional areas in which the ALJ, relying on the earlier psychological evidence, found only mild limitations and imposed no restrictions in Plaintiff's RFC. Therefore, should Dr. Goff's opinion be considered persuasive, there is a reasonable probability that the Commissioner's assessment of Plaintiff's mental impairments and resulting functional limitations would change and thereby alter the outcome of Plaintiff's disability determination. See, e.g., Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (remanding for consideration of a physician's new evaluation that contradicted the ALJ's finding and conclusions regarding the severity of

the claimant's spinal problems); *T.*, 2026 WL 579940, at *6 (remanding for consideration of a physician's new assessment that had an objective basis and conflicted with the ALJ's RFC); *Rodriguez-Serrano v. Comm'r of Soc. Sec.*, 2025 WL 2770859, at *5 (M.D. Fla. Sept. 26, 2025) (remanding for consideration of a physician's new assessment that supported more restrictive mental limitations in the claimant's RFC).

## VI. CONCLUSION

In sum, because the additional psychological evaluation is new, material, chronologically relevant, and creates a reasonable probability it would change the administrative outcome, remand is appropriate so that the Commissioner may consider the additional evidence together with the evidence previously of record. Accordingly, it is

ORDERED that the Commissioner's decision is REVERSED and REMANDED. A separate judgment will issue.

DONE this 25th day of August, 2026.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE